**Walter WHITE, Plaintiff-Appellant,**

v.

**GENERAL SERVICES ADMINISTRATION, Defendants-Appellees.**

**No. 79–4192.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1980.

Decided Aug. 7, 1981.

Lembhard G. Howell, Seattle, Wash., for plaintiff-appellant.

Harry McCarthy, Asst. U. S. Atty., Seattle, Wash., for defendants-appellees.

Before DUNIWAY, GOLDBERG * and CANBY, Circuit Judges.

CANBY, Circuit Judge.

This appeal raises two primary issues: (1) whether reference of this Title VII case to a magistrate, and the local rule authorizing that reference, violated 42 U.S.C. § 2000e–5(f)(5); and (2) whether Title VII is the sole judicial remedy available to a federal employee who alleges racial discrimination and seeks recovery not only from the federal government but from individual defendants. A third, subsidiary issue is whether a Title VII action against the government is the exclusive judicial remedy for retaliation against an employee for filing a charge of discrimination. We conclude that the reference and the local rule did not violate the statute. We also conclude that a Title VII action against the federal government is the exclusive judicial remedy for federal employment discrimination and for retaliation for filing a charge of discrimination. The judgment of the district court is affirmed.

### I.

White was an employee of the General Services Administration (GSA) at a warehouse in Auburn, Washington. He was demoted during a reduction in force in 1972 and sought administrative relief on the ground that his demotion was the result of discrimination based upon his race. The Civil Service Commission ultimately concluded that his claim was unfounded and denied relief. White then brought this action in district court, which granted summary judgment against him on the basis of the administrative record. This court, by unpublished order, No. 75–2621, March 7, 1977, 556 F.2d 590, remanded the case to the district court for reconsideration in light of the intervening decision in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), which disapproved the entry of judgment against Title VII plaintiffs solely on the basis of an administrative record.

On remand, the district court, over White's objection, referred the case to a United States Magistrate sitting as a special master pursuant to Rule 53, F.R.Civ.P. and 42 U.S.C. § 2000e–5(f)(5), and Local Magistrate Rule MR 21 (now MR 5). The magistrate concluded that the only permissible basis for this suit was 42 U.S.C. § 2000e–16. He therefore recommended that the court strike all other claims from the pretrial order and dismiss all individual defendants except the GSA Administrator. These recommendations were accepted by the district court. The magistrate then conducted a hearing on the merits of White's claim and recommended that judgment be entered in favor of the Administrator. The district court reviewed the magistrate's findings and adopted his report.[1] White appealed.

### II.

**A. Referral to the Magistrate:**

Upon determining that he could not set White's case for trial within 120 days, the district judge, over White's objection, referred the matter to a United States Magistrate for hearing.

42 U.S.C. § 2000e–5(f)(5) provides:

It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within

---

* The Honorable Irving L. Goldberg, Senior Circuit Judge, Fifth Circuit, sitting by designation.

1. One sentence in proposed finding 4, referring to the processing of White's initial complaint to the GSA, was deleted.

one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure.

■ White raises two objections. First, he asserts that the government did not file its answer until September 7, 1977, some six weeks after the order of reference was entered. White argues that the reference was made prior to joinder of issue and is consequently inconsistent with the statute's provision for reference when the judge has not scheduled the trial "within 120 days after issue has been joined." We need not rule on the correctness of White's interpretation of the statute, however, because we conclude that issue was joined when the government filed its motion for summary judgment on the basis of the administrative record. That record sufficiently apprised both White and the trial court of the government's position.

Moreover, even if issue was not joined until September 7, the court's referral was not necessarily improper. Two days after the government filed its answer, the district judge denied White's motion to reconsider the reference. We find this reaffirmation of the referral was sufficient to comply with the statutory requirement even under the interpretation urged by White.

White also contests the validity of Local Magistrate's Rule MR 5 (formerly Rule MR 21), Western District of Washington, under which the reference was made. That rule provides:

> In accordance with 28 U.S.C. § 636(b)(2), the full-time magistrates in this district, upon reference by a district judge, may, without additional compensation:
>
> .    .    .    .    .
>
> (b) Serve as special master to try the issues in employment discrimination cases under Title VII of the Civil Rights Act of

1964, as amended [42 U.S.C. § 2000(e)(5)(F)(5) (sic)], without regard to the provisions of Rule 53(b), whenever the district judge determines that the case could not be scheduled for trial within one hundred and twenty (120) days after issue is joined.

White contends that allowing the case to be referred to a magistrate "without regard to the provisions of Rule 53(b)" [2] is contrary to § 2000e–5(f)(5), which authorizes appointment of a master "pursuant to Rule 53."

■ Although White's argument has literal appeal, a careful examination of the statute and the relevant legislative history indicates that the local rule is proper. Despite the statutory language providing for appointment of a master pursuant to Rule 53, it is clear that Congress intended to relax that Rule's stricture that reference shall be made "only upon a showing that some exceptional condition requires it." *Supra*, n. 2. *See Hackley v. Roudebush*, 520 F.2d 108 (D.C.Cir.1975); Legislative History of the Equal Employment Opportunity Act of 1972, at 1730–31 (hereinafter referred to as Legislative History). There would have been little reason for the statute had Congress merely wished to confine referrals to the extremely limited instances contemplated by Rule 53(b). We therefore view the citation to Rule 53 in § 2000e–5(f)(5) as manifesting congressional intent to incorporate all of the rule except the severe restrictions upon reference.

Our reading of § 2000e–5(f)(5) is supported by its legislative history. That history indicates that Congress was primarily concerned with expediting the disposition of Title VII cases. Legislative History at 1675–76, 1730–31. Indeed, the original draft of the Senate amendment which eventually became § 2000e–5(f)(5) made referral to a magistrate mandatory if the case was not set for trial within 120 days. [3] Yet even

---

**2.** Rule 53(b) states:

Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of dam-

ages, a reference shall be made only upon a showing that some exceptional condition requires it.

**3.** S. 2515 introduced by Senators Javits and Williams stated:

that draft required that referral be made pursuant to Rule 53.

We find the Washington Rule consistent with congressional intent. Properly interpreted, the Rule's authorization of reference to a master "without regard to the provision of Rule 53(b)" simply means that reference is not subject to the portions of Rule 53(b) that severely limit the use of a master. The Local Rule is therefore in accord with the statute's relaxation of Fed. R.Civ.P. 53(b).

*Flowers v. Crouch Walker Corp.*, 507 F.2d 1378 (7th Cir. 1974), cited by White, is not to the contrary. In *Flowers*, the district court local rule provided that all Title VII cases be assigned by the court clerk to a magistrate. The magistrate conducted all pre-trial conferences, supervised discovery and received status reports. When discovery was largely completed, the clerk assigned the case to a district judge. The judge referred the case back to the magistrate for further conferences and preparation of a pre-trial order. After the pre-trial order was prepared, the case was returned to the judge who immediately referred the case back to the magistrate for trial. The Seventh Circuit invalidated the local rule because its provision for assignment of cases to a magistrate by a clerk was inconsistent with 42 U.S.C. § 2000e–5(f)(4) and (5), which called for assignments to be made by a judge. The decision does not deal with limitations on the power·of judges to make such assignments.

B. Title VII as the exclusive judicial remedy for federal employment discrimination:

In addition to his Title VII claim, White asserted claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, 2000d and the Constitution. Before trial the magistrate ruled that Title VII was the exclusive remedy available to a federal employee alleging

job-related racial discrimination. He therefore recommended that the district court dismiss all claims other than those based on 42 U.S.C. § 2000e–16. The magistrate also recommended that the district court dismiss all the individual defendants except the GSA Administrator in his official capacity.[4] The district court adopted these recommendations.

As originally enacted, Title VII did not provide a remedy for a federal employee alleging job-related racial discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed.2d 402 (1976). This loophole in the statute was filled by § 2000e–16 of the 1972 amendments. In *Brown*, the Supreme Court, after a review of both the statutory language and the legislative history, concluded that the effect of the 1972 amendments was to make Title VII the exclusive remedy for federal employee race discrimination. The *Brown* rule was subsequently applied by this court in *Scott v. Perry*, 569 F.2d 1064 (9th Cir. 1973).

White asserts, however, that the holding in *Brown* is limited to actions against the United States and does not extend to actions against federal officials acting in their individual capacities. We disagree.

*Brown* did not distinguish between a suit against the government or its individual employees; rather, the court concluded that congressional intent underlying § 2000e–16 was to create "an exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." 425 U.S. at 829, 96 S.Ct. at 1966. We believe that allowing additional individual remedies would interfere with that carefully devised scheme by permitting circumvention of administrative remedies. We therefore conclude that the principles announced in *Brown* govern this

If the judge designated pursuant to subsection (f)(3) of this section does not assign the case for trial within one hundred and twenty days after issue has been joined, that judge *shall* appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure. (Emphasis supplied.)

4. Title VII provides that actions based upon federal employment discrimination are to be brought against the director of the agency concerned. 42 U.S.C. § 2000e–16(c).

case and limit plaintiff to his Title VII claim against the federal government. We note that the Third Circuit and the Fifth Circuit share our view of *Brown. Gissen v. Tackman,* 537 F.2d 784 (3d Cir. 1976) (en banc); *Newbold v. United States Postal Service,* 614 F.2d 46 (5th Cir.), *cert. denied,* 449 US. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980). *See Berio v. EEOC,* 446 F.Supp. 171 (D.D.C.1978).[5]

C. Title VII as the exclusive judicial remedy for retaliation for filing an EEO complaint.

Finally, White argues, with very little elaboration, that the actions of the defendant officials in demoting him were in retaliation for his making an EEO complaint, and that the chilling effect violated his first amendment rights. He contends that as a result he has a right of action against the officials independent of his Title VII remedy.

It is true that Title VII does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In this instance, however, White has not asserted a separate constitutional claim for which there is no statutory remedy. Any claims of retaliation are within the scope of Title VII. Section 2000e–3 provides in pertinent part:

> (a) It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge under this subchapter.

Although § 2000e–3 specifically addresses actions by private employers, it is equally applicable to actions by the federal government. "[B]y drafting § 717 [§ 2000e–16] to prohibit 'any discrimination', Congress in-

tended to bar the federal government from engaging in all those forms of discrimination identified in §§ 703 and 704 [§§ 2000e–3 and 2000e–4], and others as well." *Porter v. Adams,* 639 F.2d 273, 278 (5th Cir. 1981). Title VII therefore provides a statutory remedy for retaliation against filing an EEO charge, and no independent *Bivens*-type action is available. *See Carlson v. Green,* 446 U.S. at 18–19, 100 S.Ct. at 1472–1473; *Porter v. Adams, supra.* For reasons already stated, White's Title VII remedy is against the government only, and not the individual defendants.

The decision of the district court is affirmed.

---

**Editor's Note:** The opinion of the United States Court of Appeals, Ninth Circuit in *William Inglis & Sons Baking Co. v. ITT Continental Baking Company, Inc.* published in the advance sheets at this citation 652 F.2d 917–964, was withdrawn from bound volume and will be republished as amended.

---

**5.** *Brosnahan v. Eckerd,* 435 F.Supp. 26 (D.D.C. 1977) relied upon by White does not compel a contrary conclusion. It is true that in *Brosnahan* Judge Gesell permitted the plaintiff to maintain his suit against the individual defendants. In that case, however, Brosnahan's claims were not limited to employment discrimination; he also alleged that the individual defendants violated his rights under the First Amendment to the constitution. 435 F.Supp. at 28.